Ms. Chandra Huston, Staff Writer The Baxter Bulletin 16 West 6th Street Mountain Home, AR 72654
Dear Ms. Huston:
I am writing in response to your request, made pursuant to A.C.A. § 25-19-105(c)(3)(B), for my opinion on whether the decision of the Mountain Home School District (the "District") to deny you access to the "entire personnel file" of the District's former business manager is consistent with the Arkansas Freedom of Information Act (FOIA), A.C.A. §§ 25-19-101—109 (Repl. 2002 and Supp. 2005). You report that the former employee was "placed on administrative leave in January" and that she subsequently resigned at the request of the District's superintendent. In correspondence denying your request for access to the personnel file, counsel for the District characterizes the sequence of events as an "initial suspension and subsequent resignation." Counsel further declares that statements made by the superintendent and the former employee "fully address the situation and there is no compelling public interest in further disclosure."
By law, I am directed to opine whether the custodian's decision on release of the requested records is consistent with the FOIA. A.C.A. § 25-19-105(c)(3)(B). I have not been provided a copy of the records themselves and consequently cannot opine definitively regarding the records' release. However, I can and will set forth the tests the custodian should apply in determining whether to release all or part of the requested information. Although I cannot make a determination regarding particular documents not in my possession, for reasons set forth below, I strongly suspect that the custodian erred in simply issuing a blanket denial of access to the file.
Records that fall within the description "personnel file" will likely comprise both "personnel records" and "employee evaluation/job performance records" within the meaning of the FOIA. It will be important for the custodian of the records to classify the records correctly because the standards for releasing these two types of records differ.
The FOIA provides an exemption from disclosure for "personnel records to the extent that disclosure would constitute a clearly unwarranted invasion of personal privacy." A.C.A. §25-19-105(b)(12) (Supp. 2005). "Employee evaluation or job performance records" on the other hand, are releasable only if the following three conditions have been met:
 1. There has been a final administrative resolution of any suspension or termination proceeding;
 2. The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and
 3. There is a compelling public interest in the disclosure of the records in question.
A.C.A. § 25-19-105(c)(1). Employee evaluation or job performance records cannot be released unless each prong of this test has been met.
Although the FOIA does not define the term "personnel records," this office has consistently taken the position that "personnel records" are any records other than employee evaluation/job performance records (discussed below) that relate to the individual employee. See, e.g., Ark. Ops. Att'y Gen. Nos.2006-035; 2004-178; 2003-336; 2003-055; 2002-085; 2001-154; 1999-147. Similarly, the FOIA does not define the term "employee evaluation or job performance records," nor has the phrase been construed judicially. This office has consistently taken the position that any records that were created by or at the behest of the employer and that detail the performance or lack of performance of the employee in question with regard to a specific incident or incidents are properly classified as employee evaluation or job performance records. See, e.g., Ark. Ops. Att'y Gen. Nos. 2006-035; 2005-030; 2004-211; 2003-073; 1998-006; 1997-222; 1995-351; 1994-306; 1993-055. The record must also have been created for the purpose of evaluating an employee. See,e.g., Ark. Op. Att'y Gen. No. 2004-012. The exemption promotes candor in a supervisor's evaluation of an employee's performance with a view toward correcting any deficiencies. See J. Watkins R. Peltz, THE ARKANSAS FREEDOM OF INFORMATION ACT (mm Press, 4th ed. 2004), at 196. According to opinions of this office, documents such as written reprimands and letters of caution, documents supporting a recommendation for suspension or dismissal, letters related to promotions and demotions, and records that were generated as part of an investigation of allegations of the misconduct and that detail incidents that gave rise to such allegations generally fall within the category of "employee evaluations or job performance records." See, e.g.,
Ark. Ops. Att'y Gen. Nos. 2006-035; 2003-078; 2001-203; 1999-147; 1993-105; 1993-055; 1992-231; 1991-324. Documents received from third parties generally are not employee evaluation or job performance records, but might be classified as "personnel records." See, e.g., Ark. Op. Att'y Gen. Nos. 2006-035; 1998-001; 1996-342.
Turning to the FOIA request in question, in support of his decision not to release any portion of the former employee's personnel file, counsel for the District has declared only that the records do not meet the three-part test for disclosure of employee evaluation/job performance records recited above. This conclusion is clearly erroneous if, as seems almost certain, the file contains documents that qualify as personnel records but not as employee evaluation/job performance records. Subject to the possible redaction of exempt information such as medical information or social security numbers, see, e.g., Ark. Ops. Att'y Gen. Nos. 2006-035; 2003-153; 1993-300; 1991-003, personnel records must be released unless their disclosure would constitute a clearly unwarranted invasion of the employee's personal privacy. A.C.A. § 25-19-105(b)(12). Although I have no specific information concerning the relevant records, because of the likely absence of a substantial privacy interest in most personnel records, I believe the District in all likelihood erred in declining to release documents falling within this designation. For instance, my predecessors have opined, and I concur, that records such as payroll forms and documentation relating to leaves of absence should be released and that if such records contain exempt information such as medical information or social security numbers, that information should be redacted before the records are released. See, e.g., Ark. Ops. Att'y Gen. Nos. 2006-035; 2003-153; 1993-300; 1991-003.
With respect to those documents that qualify as employee evaluation/job performance records, I am troubled by several remarks offered by the District's counsel as justifying the decision to withhold the records. First, the custodian suggests that statements issued by the District superintendent and the former business manager "make it clear that the records in her file did not form the basis for the initial suspension and subsequent resignation." To begin with, although the statements of interested parties might be of some significance in determining whether a particular prong of the three-part test has been met, the custodian is obligated to review the entire record in order to determine whether particular documents indeed "formed the basis" for a suspension or termination.
Based upon the factual recitation you have provided, there appears to be a question as to whether the business manager was indeed "suspended" in this instance. I am struck by the distinction between your characterizing the former employee's initial absence as an "administrative leave" and the District's counsel characterizing it as a "suspension." As noted in my text, an employee evaluation/job performance record will be subject to disclosure only if, inter alia, the document formed a basis for a suspension or termination. In considering whether to release any documents that might qualify as employee evaluation/job performance records, the custodian will need to determine whether the business manager was, as the District's counsel suggests, indeed suspended.
The custodian will further need to determine whether there was a final administrative resolution of any suspension that may have occurred — i.e., whether the business manager exhausted any administrative remedies available to her. If not, any records relating to the suspension would not be subject to disclosure.See, e.g., Ark. Ops. Att'y Gen. Nos. 2005-030; 1995-326. Although you have noted that the District's business manager resigned, I am not aware of whether she has any further avenues of administrative appeal concerning the suspension. If any avenues of administrative appeal are available to her, this particular prong of the applicable test for disclosure of documents relating to the suspension may not yet have been met.See Ark. Ops. Att'y. Gen. Nos. 2005-030; 2004-212; 2003-381. If no further administrative appeals are available, however, I will note that her resignation subsequent to the suspension has no impact on the question of whether there has been a final administrative resolution of the suspension. Ark. Ops. Att'y. Gen. Nos. 2005-030; 2002-158. That is, the fact that the employee resigns after the initial suspension does not keep the suspension from being "final" for purposes of the release of job performance records, and such records may be released if the remainder of the test for release of such records is met — i.e., if a compelling public interest exists in disclosure of the documents. Id.
With respect to the disclosability under the FOIA of records relating to the business manager's resignation, an employee's resignation does not generally meet the criteria for release of evaluation or job performance records, which are predicated as a threshold matter upon a "decision to suspend or terminate the employee. . . ." A.C.A 25-19-105(c)(1). See also generally Ark. Ops. Att'y Gen. Nos. 2006-035; 2005-094; 1992-266. This office has previously opined on numerous occasions that a voluntary resignation in the face of a disciplinary challenge does not amount to a suspension or termination. See, e.g., Ark. Ops. Att'y Gen. Nos. 2006-053; 2004-219; 2002-235; 2001-246; 1998-188; 1997-063. On the other hand, other previous opinions of this office leave open the possibility that a coerced resignation might amount to a constructive termination. One of my predecessors has acknowledged that under certain facts, "a resignation tendered in the face of a more certain, impending termination could be deemed to be a forced, coerced or constructive termination for purposes of A.C.A §25-19-105(c)(1)." Ark. Op. Att'y Gen. 1997-063, citing Dobbinsv. Everett, 2 Ark. App. 254, 620 S.W.2d 309 (1981) (employee, who, faced with certain termination, took less severe, embarrassing and traumatic option of resignation rather than discharge, did not quit voluntarily and without good cause for purposes of employment compensation decision); accord Ark. Ops. Att'y Gen. Nos. 2005-094; 2004-219. You report that the superintendent in his public statement announced that he had asked for the former business manager's resignation. I am not a finder of fact and cannot opine whether the circumstances in this case involved a constructive termination. However, the custodian of records will need to undertake this inquiry in conducting the above described evaluation of employee evaluation/job performance records.
I am further troubled by the District counsel's suggestion that there can be "no compelling interest in further disclosure" relating to the relevant events simply because the statements recently issued by the superintendent and the former employee "fully address the situation." In my opinion, assuming a compelling public interest in disclosure existed before any information regarding the pertinent facts was publicized, that interest would not be rendered anything less than compelling merely because some information had become public through statements issued by the interested parties. This is particularly true in light of the fact that an employer and former employee may share a mutual interest in publicly minimizing the significance and impact of events that led to particular disciplinary action against the employee. Indeed, you appear to be aware of this possibility in declaring that you wish to review the former business manager's personnel file in order to ensure that "there is no wrongdoing involving taxpayer money." In my opinion, then, assuming a compelling public interest in disclosure existed before anyone involved with this matter commented publicly, the custodian would be mistaken in suggesting that the compelling interest was mitigated merely by virtue of the fact that the superintendent and the former business manager have both commented publicly.
The question thus arises what might constitute a "compelling public interest" in this particular instance. I have previously stated the following with regard to this portion of the test:
 The FOIA at no point defines the phrase `compelling public interest' as used in the final prong of the test for disclosure set forth in A.C.A. § 25-19-105(c)(1). However, Professors Watkins and Peltz, referring to Attorney General Opinions on this issue, offer the following guidelines:
 . . . [I]t seems that the following factors should be considered in determining whether a compelling public interest is present: (1) the nature of the infraction that led to suspension or termination, with particular concern as to whether violations of the public trust or gross incompetence are involved; (2) the existence of a public controversy related to the agency and its employees; and (3) the employee's position within the agency. In short, a general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present. However, a link between a given public controversy, an agency associated with the controversy in a specific way, and an employee within the agency who commits a serious breach of public trust should be sufficient to satisfy the `compelling public interest' requirement.
Ark. Op. Att'y. Gen. 2004-272 at 5, quoting Watkins and Peltz,supra at 207 (footnotes omitted). Professors Watkins and Peltz also note that "the status of the employee" or "his rank within the bureaucratic hierarchy" may be relevant in determining whether a "compelling public interest" exists. Id. at 206 (noting that "[a]s a practical matter, such an interest is more likely to be present when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue.")
The existence of a "compelling public interest" in disclosure will necessarily depend upon all of the surrounding facts and circumstances. Although I cannot undertake this factual review, I will note that two factors likely weigh in favor of the existence of a compelling public interest in this instance — namely, the rank of the employee in question and the existence of a public controversy. Again, however, I am not situated to determine whether all the facts considered together would support the release of particular job performance or evaluation records. Only the custodian of the records can make that final decision, subject to review by a trier of fact, such as a judge or jury, with access to, and in full consideration of, all the relevant evidence.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh